## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

LAMONT D. COOPER,

               Plaintiff,

V.

JOCKEY INTERNATIONAL, INC.,

               Defendants.

**Case No.**

## COMPLAINT

Cooper, Lamont D. Cooper ("Cooper") by and through his undersigned counsel, hereby file this Complaint against Defendant, Jockey International, Inc. ("Jockey"). In support of their Complaint, Cooper alleges as follows:

### NATURE OF THE CASE

1. This is an action under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), seeking *de novo* judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United States Patent and Trademark Office ("USPTO"), and claims for trademark infringement pursuant to Lanham Act 15 U.S.C. § 1125(a) and related state law claims.

### THE PARTIES

2. Cooper is an individual who resides at 862 Heritage Post Lane, Grayson, Georgia 30017.

3. On information and belief, Jockey is a Wisconsin corporation, with its principal place of business at 2300 60th Street, Kenosha, Wisconsin, 53140.

## JURISDICTION AND VENUE

4. This action seeks review and reversal of a decision of the TTAB of the USPTO. This action arises under the laws of the United States, 15 U.S.C. § 1071(b).

5. This action also brings claims related to the allegations at issue in the TTAB decision and asserts claims for trademark infringement pursuant 15 U.S.C. § 1125(a) against Jockey for its use of certain marks, including marks addressed in the TTAB decision. Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Additionally, this Court has supplemental jurisdiction over Cooper's state law claims for pursuant to 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Jockey because Jockey has regularly solicited business or derived substantial revenue from goods promoted, advertised, sold, used, and/or consumed within this District and expects their actions to have consequences in this District.

8. Venue in this District is proper under 28 U.S.C. § 1391(b) because on information and belief, Jockey regularly transact business within this District and has personally appeared before this Court in a related proceeding.

## FACTUAL BACKGROUND

### *From Bootstraps to Brand: Cooper's Humble Start*

9. Cooper is a self-made entrepreneur who built his business from humble beginnings, inspired by the legacy of legendary Black jockeys.

10. In the summer of 2006, driven by his passion for honoring these historical figures, Cooper launched his Black Jockey Clothing brand ("BJC" brand).

11. Cooper's brand features logo designs incorporating a drawing of an African-American man wearing an equestrian uniform ("BJC Marks"). Some of which are depicted below.



12. Cooper has continuously used the BJC Marks and associated trademarks since 2006 in connection with the sale of hats, hoodies, jackets, long-sleeved shirts, shoes, and t-shirts.

13. Cooper has established his priority of use as early as 2006 through consistent branding, marketing, and the sale of goods featuring the BJC Marks and associated trademarks.

**Jockey's Scheme To Hijack and Diminish a Small Business Owner's Brand**

14. Jockey is an apparel company headquartered in Kenosha, WI.

15. In 2010, Jockey discovered the use of another trademark by Cooper's licensee, at which point it also became aware of Cooper's BJC Marks and the related clothing designs.

16. Following this encounter, Jockey deliberately embarked on a scheme to create new trademarks and apparel designs modeled after Cooper's BJC brand, in an attempt to misappropriate his original designs and overshadow his market presence.

| COOPER'S DESIGNS | JOCKEY'S DESIGNS |
|---|---|
| First Use: At least as early as Aug. 1, 2006 ("BJC Figure") | June 30, 2012 |
| | |

3




First Use: At least as early as 2006 - 2007



Application Filing Date: May 23, 2012
Alleged First Use: Dec. 31, 2013





First Use Date: At least as early as
Summer 2008



Application Filing Date: Nov. 02, 2017

Alleged First Use: Dec. 31, 2018

| | |
|---|---|
| <br><br>First Use Date: At least as early as Summer 2008 | <br><br>No <u>Wayback Machine Crawls</u>[1] evincing this product before 2013, after becoming aware of Cooper's use. Also important to note Jockey has never included hats in its prior trademark applications. |
| <br><br>First Use Date: At least as early as 2008 - 2009 | <br><br>No <u>Wayback Machine Crawls</u>[2] evincing product or similar products before 2012, after becoming aware of Cooper's use. |

---

[1] https://web.archive.org/web/20130203193355/https://www.jockey.com/catalog/product/sportiqe-casual-hat-grey . Last accessed February 13, 2025.

[2] https://web.archive.org/web/20121102214439/https://www.jockey.com/catalog/product/sportiqe-ls-raglan. Last accessed February 13, 2025.



| | |
|---|---|
| Fall 2009 | In in or about 2012 or later |

7. This calculated effort by Jockey appears to have been a premeditated attempt to thwart Cooper's business growth and misappropriate his intellectual property without compensation or authorization.

### Battle Before the Trademark Trial and Appeal Board ("TTAB")

8. On April 4, 2018, Cooper filed a federal trademark application, Serial No. 87863113, for the following graphic design: (the "BJC Figure") under Section (1) of the Lanham Act, 15 U.S.C. § 1051(a) in connection with "Hats; Hoodies; Jackets; Long-sleeved shirts; Shoes; T-Shirts" in International Class 25. Cooper claimed a date of first use in commerce of August 1, 2006.

9. On May 22, 2019, Jockey filed a Notice of Opposition against Application Serial No. 87863113, the BJC Figure, with the TTAB. The proceeding was instituted under Opposition No. 91248336.

10. On May 14, 2021, Cooper filed a Second Amended Answer to Jockey's Notice of Opposition and Counterclaims.

11. In his Counterclaims, Cooper alleged, among other things, that the 1960s Half Jockey Mark (Reg. No. 0711570), the 1960s Full Jockey Mark (Reg. No. 0768840), and the 2011 Full Jockey Mark (Reg. No. 4471345) should all be cancelled due to abandonment, and that the 2011 Full Jockey Mark (Reg. No. 4471345), the 2011 Composite Jockey Mark (Reg. No. 4641620), and the Jockey Seal (Reg. No. 5984914), should be cancelled due to a likelihood of confusion with certain of Cooper's Be Legendary Marks

12. Following the denial of motions for summary judgment, the exchange of discovery, and trial testimony, the parties submitted trial briefs, and oral arguments were held before the TTAB before a three-member panel on February 22, 2024.

13. After five years of hard-fought litigation, on September 19, 2024, the TTAB issued its decision, finding:

   (a) The 1960s Half Jockey Mark should be cancelled due to abandonment;

   (b) The 1960s Full Jockey Mark should be cancelled due to abandonment;

   (c) The 2011 Full Jockey Mark should be cancelled as to certain goods due to abandonment;

   (d) The Jockey Seal Mark should be cancelled because of likelihood of confusion with Cooper's Be Legendary Marks; and

   (e) Jockey's opposition to registration of the BJC Figure was sustained because of likelihood of confusion.


***Jockey's Unlawful Tactics and Their Crushing Impact on Cooper, a Small Business Owner***

15. Five years later, the dispute persists, and Jockey continues its unauthorized and infringing use.

16. Jockey's actions constitute willful trademark infringement, unfair competition, and false designation of origin causing irreparable harm to Cooper's brand and business operations.

17. Cooper has suffered and continues to suffer damages, including loss of control over his brand identity and financial strain due to Jockey's scheme to misappropriate his brand's identity and create market confusion.

18. This "reverse confusion" is such that consumers are likely to associate, or have associated, Cooper's Be Legendary Marks with Jockey, rather than Cooper.

19. Jockey's continued infringement creates the substantial likelihood that this confusion including reverse confusion particularly due to Jockey's massive size and advertising budget.

20. Cooper is and will continue to be irreparably harmed by Jockey as long as Jockey is able to continue to blatantly infringe upon Cooper's rights including his Be Legendary Marks.

21. Simply put, Cooper has been irreparably harmed by Jockey's illegal infringement of its Be Legendary trademarks. Jockey's continued unlawful use of Cooper's trademarks will increase the irreparable harm to Cooper, including weakening brand awareness and goodwill developed over many years at significant expense.

22. If allowed to continue unabated, Jockey's disparate market strength and massive advertising budget will ensure that consumers will associate the Be Legendary Mark with Jockey, or assume that Cooper's Be Legendary Marks have become connected with Jockey, or worse, believe that Cooper is an unauthorized user of and is infringing upon Jockey's Seal, in effect destroying Cooper of any effective use of his trademarks.

## COUNT I
### (PARTIAL REVERSAL OF THE SEPTEMBER 19, 2024 TTAB DECISION)

23. Cooper repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

24. Cooper appeals the erroneous September 19, 2024 decision of the Trademark Trial and Appeal Board in the matter of Jockey International, Inc. v. Lamont D. Cooper, Opposition No. 91248336.

25. The September 19, 2024 TTAB decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

26. The TTAB erred in finding that Cooper's BJC Figure should not be permitted to register because it is likely to be confused with Jockey's 2011 standalone figure (Reg. No. 4471345).

27. The TTAB's September 19, 2024 decision was contrary to the pertinent law, unsupported by substantial evidence, and therefore, insufficient to support refusal of registration for Cooper's BJC Figure.

28. Cooper will present additional evidence demonstrating the widespread third-party use of jockey imagery in connection with the goods in question, establishing that Jockey's standalone figure has been diluted by extensive third-party use and should therefore receive reduced protection.

29. Cooper has taken no appeal of the September 19, 2024 decision to the United States Court of Appeals for the Federal Circuit.

30. Cooper seeks a *de novo* review of the TTAB's September 19, 2024 decision by civil action under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).

31. This petition of appeal is timely per 15 U.S.C. § 1071(b).[3]

32. Cooper seeks an order reversing the TTAB's September 19, 2024, decision on the grounds that Cooper's BJC Figure does not create a likelihood of confusion with Jockey's standalone mark and that U.S. Trademark Application Serial No. 87863113) should be registered on the USPTO's Principal Register.

33. The TTAB's decision was contrary to applicable law, unsupported by substantial evidence, and erroneous in light of the evidence on record. Therefore, the TTAB's ruling fails to justify the refusal of Cooper's BJC Figure registration.

## COUNT II
### LANHAM ACT - FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125(a)

34. Cooper repeats and re-alleges each and every allegation contained in paragraphs 1 through 33 as if fully set forth herein.

35. Cooper alleges reverse confusion because Jockey's unauthorized and unlawful use of the Jockey Seal name for its goods has caused, and is likely to cause, confusion, including reverse confusion, among consumers as to Coopers' affiliation, connection, or association with Jockey's goods.

36. Jockey's acts were knowing, deliberate, and willful.

37. Jockey has profited from its wrongful conduct.

38. As a result of Jockey's unauthorized and unlawful use of the Jockey Seal, Coopers have been damaged.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT

---

[3] Pursuant to 37 C.F.R. § 2.145(e)(1)(i), Cooper petitioned the Director of the USPTO to extend the time to seek judicial review under. The Petitioner granted the extension. 165-169 TTABVUE.

39. Cooper incorporates the allegations in Paragraphs 1 through 38 above as if set forth fully herein.

40. Cooper first adopted and used in commerce his Be Legendary Marks at least as early as Summer 2008.

41. Cooper has invested heavily in the BJC brand to include the Be Legendary Marks, and has established goodwill and reputation linked to its brand that distinguishes it from others.

42. Cooper's Be Legendary Marks are inherently distinctive, arbitrary names subject to trademark protection in New York, Georgia, and throughout the U.S.

43. The Jockey Seal is nearly identical and confusingly similar to Cooper's Be Legendary Mark depicted below.



44. The Jockey Seal is nearly identical and confusingly similar to Cooper's Be Legendary Mark depicted below.



45. Cooper's Be Legendary Marks predate any use which Jockey may rely for purposes of priority. Accordingly, Cooper has priority over Jockey's use.

46. The Jockey Seal is confusingly similar to Cooper's Be Legendary Marks in sight, connotation, and commercial impression.

47. On information and belief, the Jockey Seal is used to market goods that are substantially similar to those offered by Cooper.

48. Jockey adopted and used the Jockey Seal with knowledge that its use is likely to cause consumer confusion including reverse confusion, mistake, and to deceive consumers.

49. Jockey's use of the Jockey Seal which is in effect identical or substantially similar to Cooper's Be Legendary Marks is without Cooper's permission, consent, or authorization.

50. As a consequence of Jockey's actions, consumer confusion including reverse confusion is likely to occur absent an injunction.

51. Cooper has been irreparably harmed as a result of Jockey's actions as described herein.

## COUNT IV

### GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT, O.C.G.A.10-1-370 ET SEQ.

52. Cooper incorporates the allegations in Paragraphs 1 through 51 above as if set forth fully herein.

53. Cooper has used and continues to use his Be Legendary Marks in the State of Georgia in connection with the sale of goods.

54. Cooper's Be Legendary Marks have been used to identify Cooper as the source of the goods sold in the State of Georgia .

55. On information and belief, Jockey has intentionally and willfully used the Jockey Seal in connection with their promotion of goods directed throughout the U.S. and more specifically, at citizens of Georgia without Cooper's authorization.

56. Jockey's unauthorized use of the Jockey Seal constitutes unfair competition and false designation of origin, as described herein.

57. Jockey's conduct is deceptive or fraudulent and is likely to cause consumer confusion including reverse confusion or misunderstanding as to Cooper's affiliation, connection, or association with Jockey.

58. Jockey's conduct is in willful disregard of Cooper's valuable rights and property in his Be Legendary Marks.

59. Cooper's use in his Be Legendary Marks predate any use which Jockey may rely for purposes of priority. Accordingly, Cooper has priority over Jockey's use.

60. Jockey's actions have caused and will continue to cause irreparable injury and damage to Cooper unless Jockey is enjoined from using the Jockey Seal.

## COUNT V

### VIOLATION OF GEORGIA'S LAW AGAINST UNFAIR COMPETITION O.C.G.A. § 23-2-55

61. Cooper incorporates the allegations in Paragraphs 1 through 60 above as if set forth fully herein.

62. Jockey has engaged in a deliberate scheme of misconduct aimed at displacing Cooper, a small business owner, from the market by deceiving and misleading the public through reverse confusion. This scheme seeks to exploit Cooper's brand without just compensation, allowing Jockey to unfairly enhance its business ventures while undermining a small business's efforts to grow and compete.

63. By failing to compensate Cooper, Jockey, derives an unfair competitive advantage.

## PRAYER FOR RELIEF

WHEREFORE, Coopers respectfully pray this Court enter judgment:

A. Enter judgment reversing and vacating the September 19, 2024 decision of the TTAB in Jockey International, Inc. v. Lamont D. Cooper, Opposition No. 91248336 referenced herein, pursuant to 15 U.S.C. § 1071(b) with reference to the refusal registration of Cooper's BJC mark;

B. Ordering the USPTO to register Cooper's BJC Figure, Serial No. 87863113;

C. Award compensatory damages, in an amount to be determined by the trier of fact, for all harm Cooper has suffered as a result of Jockey's actions, including without limitation lost sales, revenue, or royalties, disgorgement of Jockey's profits, cost of corrective advertising, and other actual damages;

D. Award treble damages pursuant to 15 U.S.C. § 1117(a) based on Jockey's knowing and intentional use of confusingly similar imitations of Cooper's marks;

14

E.  Award punitive damages pursuant to Ga. Code Ann. § 51-12-5.1 based on Jockey's willful misconduct and to deter Jockey from the same or similar conduct in the future;

F.  Declare that this is an exceptional case and award Cooper's the cost of this action and Cooper's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

G.  Award pre-judgment and post-judgment interest on the foregoing sums;

H.  Ordering a preliminary and permanent injunction prohibiting Jockey's use of the Jockey Seal; and

I.  Award Cooper such other relief as the Court may deem just and proper.


## JURY TRIAL DEMAND

Coopers hereby requests a trial by jury on all issues so triable.


DATED: February XX, 2025

/s/Stephen M. Katz /
By: Stephen M. Katz, Esq. GA Bar No.
The Katz Law Group, LLC
137 Johnson Ferry Road, Suite 2230
Marietta, GA 30068-4949
(770) 988-8181 (office)
smkatz@katz.legal

/s/Dayna C. Cooper /
By: Dayna C. Cooper, Esq. (*pro hac vice pending*)
Cooper Legal, LLC
1 Olympic Pl. Suite 900
Towson, MD 21204
(202) 642.5470 (office)
Dayna@CooperLegalSolutions.com

*Attorneys for Lamont D. Cooper and Black Jockey Clothing Co.*