## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Lamont D. Cooper, | |
| *Plaintiff,* | |
| v. | Case No. 1:25-cv-00811-TRJ |
| Jockey International, Inc., | |
| *Defendant*. | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, Jockey International, Inc. ("Jockey") responds to the First Amended Complaint ("Complaint") filed on March 10, 2025, by Plaintiff, Lamont D. Cooper ("Cooper") as follows herein:

### NATURE OF THE CASE

1.      This is an action under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), seeking *de novo* judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United States Patent and Trademark Office ("USPTO"), and claims for trademark infringement pursuant to Lanham Act 15 U.S.C. § 1125(a) and related state law claims.

**ANSWER:** Paragraph 1 states to a legal conclusion to which no answer is required. To the extent an answer is required, Jockey admits that this is an action asserting claims under the Lanham Act, state law claims, and seeking de novo judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB"). Jockey denies the remaining allegations of Paragraph 1.

## THE PARTIES

2.      Cooper is an individual who resides at 862 Heritage Post Lane, Grayson, Georgia 30017.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 of the Complaint and therefore denies them.

3.      Jockey is a Wisconsin corporation with its principal place of business at 2300 60th Street, Kenosha, Wisconsin 53140.

**ANSWER:** Admit.

## JURISDICTION AND VENUE

4.      This action seeks review and reversal of a decision of the TTAB of the USPTO. This action arises under the laws of the United States, 15 U.S.C. § 1071(b).

**ANSWER:** Jockey admits that this action purports to be an action seeking review and reversal of a decision of the TTAB and that this action purports to arise under 15 U.S.C. § 1071(b). Jockey denies the remaining allegations of Paragraph 4.

5.      This action also brings claims related to the allegations at issue in the TTAB decision and asserts claims for trademark infringement pursuant 15 U.S.C. § 1125(a) against Jockey for its use of certain marks, including marks addressed in the TTAB decision. Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Jockey admits that this action purports to bring claims for trademark infringement related to Jockey's use of certain marks including certain Jockey marks that were addressed in the TTAB's decision. Jockey admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Jockey denies the remaining allegations of Paragraph 5.

6.      Additionally, this Court has supplemental jurisdiction over Cooper's state law claims for pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** The allegations in Paragraph 6 constitute legal conclusions to which no response is required. To the extent one is required, Jockey admits that the Court may exercise supplemental jurisdiction over Cooper's state law claims

pursuant to 28 U.S.C. § 1367(a) and denies the remaining allegations of Paragraph 6.

7.      This Court has personal jurisdiction over Jockey because Jockey has regularly solicited business or derived substantial revenue from goods promoted, advertised, sold, used, and/or consumed within this District and expects their actions to have consequences in this District.

**ANSWER:** The allegations in Paragraph 7 constitute legal conclusions to which no response is required. To the extent one is required, Jockey admits the Court has personal jurisdiction over Jockey for purposes of this dispute and that it has solicited business or derived revenue from goods promoted, advertised, sold, used, and/or consumed within this District. Jockey denies the remaining allegations of Paragraph 7.

8.      Venue in this District is proper under 28 U.S.C. § 1391(b) because on information and belief, Jockey regularly transact business within this District and has personally appeared before this Court in a related proceeding.

**ANSWER:** The allegations in Paragraph 8 constitute legal conclusions to which no response is required. To the extent one is required, Jockey admits that venue in this district is proper for purposes of this dispute under 28 U.S.C. § 1391(b) because Jockey transacts business within this district and that it has a

related proceeding before this Court. Jockey denies the remaining allegations of Paragraph 8.

## **FACTUAL BACKGROUND**

9.     Cooper is a self-made entrepreneur who built his business from humble beginnings, inspired by the legacy of legendary Black jockeys.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 of the Complaint and therefore denies them.

10.     In the summer of 2006, driven by his passion for honoring these historical figures, Cooper launched his Black Jockey Clothing brand ("BJC" brand).

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint and therefore denies them.

11.     Cooper's brand features logo designs incorporating a drawing of an African-American man wearing an equestrian uniform ("BJC Marks"). Some of which are depicted below.



**ANSWER:** Jockey admits that the images depicted in Paragraph 11 depict Cooper's logo designs. JOCKEY is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11 of the Complaint and therefore denies them.

12.    Cooper has continuously used the BJC Marks and associated trademarks since 2006 in connection with the sale of hats, hoodies, jackets, long-sleeved shirts, shoes, and t-shirts.

**ANSWER:** JOCKEY is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Complaint and therefore denies them.

13.    Cooper has established his priority of use as early as 2006 through consistent branding, marketing, and the sale of goods featuring the BJC Marks and associated trademarks.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint and therefore denies them.

14.    Jockey is an apparel company headquartered in Kenosha, WI.

**ANSWER:** Admit.

15.    In 2010, Jockey discovered the use of another trademark by Cooper's licensee, at which point it also became aware of Cooper's BJC Marks and the related clothing designs.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Complaint and therefore denies them.

16.    Following this encounter, Jockey deliberately embarked on a scheme to create new trademarks and apparel designs modeled after Cooper's BJC brand, in an attempt to misappropriate his original designs and overshadow his market presence.

| COOPER'S DESIGN | JOCKEY'S DESIGNS |
|---|---|
| First Use: At least as early as Aug. 1, 2006 ("BJC Figure") | June 30, 2012 ("2011 Standalone") |



| COOPER'S DESIGN | JOCKEY'S DESIGNS |
|---|---|
| First Use: At least as early as 2006 – 2007 ("BJC Composite") | Application Filing Date: May 23, 2012 Alleged First Use: Dec. 31, 2013 ("2011 Composite") |
| First Use Date: At least as early as Summer 2008 | Application Filing Date: Nov. 02, 2017 Alleged First Use: Dec. 31, 2018 ("Jockey Seal" |

| COOPER'S DESIGN | JOCKEY'S DESIGNS |
|---|---|
| <br><br>First Use Date: At least as early as Summer 2008 | <br><br>No <u>Wayback Machine Crawls</u>[1] evincing this product before 2013, after becoming aware of Cooper's use. Also important to note Jockey has never included hats in its prior trademark applications. |
| <br><br>First Use Date: At least as early as 2008 - 2009 | <br><br>No <u>Wayback Machine Crawls</u>[2] evincing product or similar products before 2012, after becoming aware of Cooper's use. |

---

[1]https://web.archive.org/web/20130203193355/https://www.jockey.com/catalog/product/sportiqe-casual-hat-grey. Last accessed February 13, 2025.
[2]https://web.archive.org/web/20121102214439/https://www.jockey.com/catalog/product/sportiqe-ls-raglan. Last accessed February 13, 2025.

| COOPER'S DESIGN | JOCKEY'S DESIGNS |
|---|---|
|  Fall 2009 | In in or about 2012 or later |

**ANSWER:** Denied.

17.    [7.]³ This calculated effort by Jockey appears to have been a

premeditated attempt to thwart Cooper's business growth and misappropriate his

intellectual property without compensation or authorization.

**ANSWER:** Denied.

18.    [8.] On April 4, 2018, Cooper filed a federal trademark application,



Serial No. 87863113, for the following graphic design:                    (the "BJC

---

³ Jockey notes that beginning with what should be Paragraph 17 the numbering in
the Amended Complaint reverted back to 7. As a result, the numbered paragraphs
listed for each paragraph beginning with this one first lists what should be the next
consecutive number followed by the number stated in the Amended Complaint in
brackets, e.g. 17 [7].

Figure") under Section (1) of the Lanham Act, 15 U.S.C. § 1051(a) in connection with "Hats; Hoodies; Jackets; Long-sleeved shirts; Shoes; T-Shirts" in International Class 25. Cooper claimed a date of first use in commerce of August 1, 2006.

**ANSWER:** Cooper's federal trademark application with Serial No. 87863113 speaks for itself. Jockey denies the allegations in Paragraph 18[8] to the extent they are inconsistent with the information contained within Cooper's federal trademark application with Serial No. 87863113.

19.    [9.] On May 22, 2019, Jockey filed a Notice of Opposition against Application Serial No. 87863113, the BJC Figure, with the TTAB. The proceeding was instituted under Opposition No. 91248336.

**ANSWER:** Admit.

20.    [10.] On May 14, 2021, Cooper filed a Second Amended Answer to Jockey's Notice of Opposition and Counterclaims.

**ANSWER:** Admit.

21.    [11.] In his Counterclaims, Cooper alleged, among other things, that the 1960s Half Jockey Mark (Reg. No. 0711570), the 1960s Full Jockey Mark (Reg. No. 0768840), and the 2011 Full Jockey Mark (Reg. No. 4471345) should all be cancelled due to abandonment, and that the 2011 Full Jockey Mark (Reg. No. 4471345), the 2011 Composite Jockey Mark (Reg. No. 4641620), and the Jockey

Seal (Reg. No. 5984914), should be cancelled due to a likelihood of confusion with certain of Cooper's Be Legendary Marks.

**ANSWER:** Cooper's Second Amended Answer to Jockey's Notice of Opposition and Counterclaims speaks for itself. Jockey denies the allegations in Paragraph 21[11] to the extent they are inconsistent with the information contained within Cooper's Second Amended Answer to Jockey's Notice of Opposition and Counterclaims.

22.    [12.] Following the denial of motions for summary judgment, the exchange of discovery, and trial testimony, the parties submitted trial briefs, and oral arguments were held before the TTAB before a three-member panel on February 22, 2024.

**ANSWER:** Admit.

23.    [13.] After five years of hard-fought litigation, on September 19, 2024, the TTAB issued its decision, finding:

   a. The 1960s Half Jockey Mark should be cancelled due to abandonment

   b. The 1960s Full Jockey Mark should be cancelled due to abandonment

   c. The 2011 Full Jockey Mark should be cancelled as to certain goods due to abandonment

    d.  The Jockey Seal Mark should be cancelled because of likelihood of confusion with Cooper's Be Legendary Marks; and

    e.  Jockey's opposition to registration of the BJC Figure was sustained because of likelihood of confusion.

**ANSWER:** The TTAB's September 19, 2024 decision speaks for itself. Jockey denies the allegations in Paragraph 23[13] to the extent they are inconsistent with the information contained within the TTAB's September 19, 2024 decision.

24.    [15.] Five years later, the dispute persists, and Jockey continues its unauthorized and infringing use.

**ANSWER:** Denied.

25.    [16.] Jockey's actions constitute willful trademark infringement, unfair competition, and false designation of origin causing irreparable harm to Cooper's brand and business operations.

**ANSWER:** Denied.

26.    [17.] Cooper has suffered and continues to suffer damages, including loss of control over his brand identity and financial strain due to Jockey's scheme to misappropriate his brand's identity and create market confusion.

**ANSWER:** Denied.

27.    [18.] This "reverse confusion" is such that consumers are likely to associate, or have associated, Cooper's Be Legendary Marks with Jockey, rather than Cooper.

**ANSWER:** Denied.

28.    [19.] Jockey's continued infringement creates the substantial likelihood that this confusion including reverse confusion particularly due to Jockey's massive size and advertising budget.

**ANSWER:** Denied.

29.    [20.] Cooper is and will continue to be irreparably harmed by Jockey as long as Jockey is able to continue to blatantly infringe upon Cooper's rights including his Be Legendary Marks.

**ANSWER:** Denied.

30.    [21.] Simply put, Cooper has been irreparably harmed by Jockey's illegal infringement of its Be Legendary trademarks. Jockey's continued unlawful use of Cooper's trademarks will increase the irreparable harm to Cooper, including weakening brand awareness and goodwill developed over many years at significant expense.

**ANSWER:** Denied.

31.    [22.] If allowed to continue unabated, Jockey's disparate market strength and massive advertising budget will ensure that consumers will associate the Be Legendary Mark with Jockey, or assume that Cooper's Be Legendary Marks have become connected with Jockey, or worse, believe that Cooper is an unauthorized user of and is infringing upon Jockey's Seal, in effect destroying Cooper of any effective use of his trademarks.

**ANSWER:** Denied.

## COUNT I

### (PARTIAL REVERSAL OF THE SEPTEMBER 19, 2024 TTAB DECISION)

32.    [23.] Cooper repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

**ANSWER:** Jockey repeats and re-alleges its responses to Paragraphs 1–31 [22] above.

33.    [24.] Cooper appeals the erroneous September 19, 2024 decision of the Trademark Trial and Appeal Board in the matter of Jockey International, Inc. v. Lamont D. Cooper, Opposition No. 91248336.

**ANSWER:** Jockey admits that this action is in part an appeal of the TTAB's September 19, 2024 decision in Jockey International, Inc. v. Lamont D. Cooper,

Opposition No. 91248336. Jockey denies the remaining allegations of Paragraph 33[24].

34.    [25.] The September 19, 2024 TTAB decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

**ANSWER:** Admit.

35.    [26.] The TTAB erred in finding that Cooper's BJC Figure should not be permitted to register because it is likely to be confused with Jockey's 2011 standalone figure (Reg. No. 4471345).

**ANSWER:** Denied.

36.    [27.] The TTAB's September 19, 2024 decision was contrary to the pertinent law, unsupported by substantial evidence, and therefore, insufficient to support refusal of registration for Cooper's BJC Figure.

**ANSWER:** The allegations in Paragraph 36 [27] state a legal conclusion to which no response is required. To the extent a response is required, Jockey admits that the TTAB's September 19, 2024 decision was contrary to applicable law, unsupported by substantial evidence, and erroneous in light of the evidence on record as set forth in Jockey's complaint in *Jockey International, Inc. v. Lamont D. Cooper and Black Jockey Company*, Case No. 24-cv-5294 (N.D. Ga.) and denies the remaining allegations in Paragraph 36 [27] of the Complaint.

37.    [28.] Cooper will present additional evidence demonstrating the widespread third-party use of jockey imagery in connection with the goods in question, establishing that Jockey's standalone figure has been diluted by extensive third-party use and should therefore receive reduced protection.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 [28] of the Complaint and therefore denies them.

38.    [29.] Cooper has taken no appeal of the September 19, 2024 decision to the United States Court of Appeals for the Federal Circuit.

**ANSWER:** Admit.

39.    [30.] Cooper seeks a *de novo* review of the TTAB's September 19, 2024 decision by civil action under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b). Case 1:25-cv-00811-TRJ Document 1 Filed 02/17/25 Page 9 of 16.

**ANSWER:** The document cited in Paragraph 39 [30] speaks for itself. Jockey denies the allegations of Paragraph 39 [30] to the extent they are inconsistent with the document cited in Paragraph 39 [30].

40.    [31.] This petition of appeal is timely per 15 U.S.C. § 1071(b).[4]

---

[4] Pursuant to 37 C.F.R. § 2.145(e)(1)(i), Cooper petitioned the Director of the USPTO to extend the time to seek judicial review under [sic]. Cooper's extensions were granted. 165-169 TTABVUE.

**ANSWER:** The allegations in Paragraph 40 [31] state a legal conclusion to which no response is required. To the extent a response is required, Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 [31] of the Complaint and therefore denies them.

41.    [32.] Cooper seeks an order reversing the TTAB's September 19, 2024, decision on the grounds that Cooper's BJC Figure does not create a likelihood of confusion with Jockey's standalone mark and that U.S. Trademark Application Serial No. 87863113) should be registered on the USPTO's Principal Register.

**ANSWER:** Jockey admits that Cooper is seeking an order reversing the TTAB's September 19, 2024 decision. Jockey is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 41 [32] of the Complaint and therefore denies them.

42.    [33.] The TTAB's decision was contrary to applicable law, unsupported by substantial evidence, and erroneous in light of the evidence on record. Therefore, the TTAB's ruling fails to justify the refusal of Cooper's BJC Figure registration.

———————————————

**ANSWER:** The allegations in Paragraph 42 [33] state a legal conclusion to which no response is required. To the extent a response is required, Jockey admits that the TTAB's September 19, 2024 decision was contrary to applicable law, unsupported by substantial evidence, and erroneous in light of the evidence on record as set forth in Jockey's complaint in *Jockey International, Inc. v. Lamont D. Cooper and Black Jockey Company*, Case No. 24-cv-5294 (N.D. Ga.) and denies the remaining allegations in Paragraph 40 [31] of the Complaint and therefore denies them.

## COUNT II

## LANHAM ACT - FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125(a)

43. [34.] Cooper repeats and re-alleges each and every allegation contained in paragraphs 1 through 42 [33] as if fully set forth herein.

**ANSWER:** Jockey repeats and re-alleges its responses to Paragraphs 1–42 [33] above.

44. [35.] Cooper alleges reverse confusion because Jockey's unauthorized and unlawful use of the Jockey Seal name for its goods has caused, and is likely to cause, confusion, including reverse confusion, among consumers as to Coopers' affiliation, connection, or association with Jockey's goods.

**ANSWER:** Denied.

19

45.    [36.] Jockey's acts were knowing, deliberate, and willful.

**ANSWER:** Denied.

46.    [37.] Jockey has profited from its wrongful conduct.

**ANSWER:** Denied.

47.    [38.] As a result of Jockey's unauthorized and unlawful use of the Jockey Seal, Coopers have been damaged.

**ANSWER:** Denied.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT

48.    [39.] Cooper incorporates the allegations in Paragraphs 1 through 38 [47] above as if set forth fully herein.

**ANSWER:**  Jockey repeats and re-alleges its responses to Paragraphs 1–47 [38] above.

49.    [40.] Cooper first adopted and used in commerce his Be Legendary Marks at least as early as Summer 2008.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 [40] of the Complaint and therefore denies them

50.    [41.] Cooper has invested heavily in the BJC brand to include the Be

Legendary Marks, and has established goodwill and reputation linked to its brand

that distinguishes it from others.

**ANSWER:** Jockey is without knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 50 [41] of the Complaint and

therefore denies them.

51.    [42.] Cooper's Be Legendary Marks are inherently distinctive,

arbitrary names subject to trademark protection in New York, Georgia, and

throughout the U.S.

**ANSWER:** Denied.

52.    [43.] The Jockey Seal is nearly identical and confusingly similar to

Cooper's Be Legendary Mark depicted below.



**ANSWER:** Denied.

53.    [44.] The Jockey Seal is nearly identical and confusingly similar to

Cooper's Be Legendary Mark depicted below.



**ANSWER:** Denied.

54.    [45.] Cooper's Be Legendary Marks predate any use which Jockey may rely for purposes of priority. Accordingly, Cooper has priority over Jockey's use.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54 [45] of the Complaint and therefore denies them.

55.    [46.] The Jockey Seal is confusingly similar to Cooper's Be Legendary Marks in sight, connotation, and commercial impression.

**ANSWER:** Denied.

56.    [47.] On information and belief, the Jockey Seal is used to market goods that are substantially similar to those offered by Cooper.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 [47] of the Complaint and therefore denies them.

57.     [48.] Jockey adopted and used the Jockey Seal with knowledge that its use is likely to cause consumer confusion including reverse confusion, mistake, and to deceive consumers.

**ANSWER:** Denied.

58.     [49.] Jockey's use of the Jockey Seal which is in effect identical or substantially similar to Cooper's Be Legendary Marks is without Cooper's permission, consent, or authorization.

**ANSWER:** Jockey admits that its use of the Jockey Seal is without Cooper's permission, consent, or authorization because no such permission, consent, or authorization is required. Jockey denies the remaining allegations of Paragraph 58 [49].

59.     [50.] As a consequence of Jockey's actions, consumer confusion including reverse confusion is likely to occur absent an injunction.

**ANSWER:** Denied.

60.     [51.] Cooper has been irreparably harmed as a result of Jockey's actions as described herein.

**ANSWER:** Denied.

## COUNT IV

### GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT, O.C.G.A.10-1-370 ET SEQ)

23

61.    [52.] Cooper incorporates the allegations in Paragraphs 1 through 51 [60] above as if set forth fully herein.

**ANSWER:**  Jockey repeats and re-alleges its responses to Paragraphs 1–60 [51] above.

62.    [53.] Cooper has used and continues to use his Be Legendary Marks in the State of Georgia in connection with the sale of goods.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 [53] of the Complaint and therefore denies them.

63.    [54] Cooper's Be Legendary Marks have been used to identify Cooper as the source of the goods sold in the State of Georgia.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 [54] of the Complaint and therefore denies them.

64.    [55.] On information and belief, Jockey has intentionally and willfully used the Jockey Seal in connection with their promotion of goods directed throughout the U.S. and more specifically, at citizens of Georgia without Cooper's authorization.

**ANSWER:** Jockey admits that it has used the Jockey Seal in connection with the promotion of goods directed throughout the U.S. without Cooper's authorization because no such authorization is required. Jockey denies the remaining allegations of Paragraph 64 [55].

65.    [56.] Jockey's unauthorized use of the Jockey Seal constitutes unfair competition and false designation of origin, as described herein.

**ANSWER:** Denied.

66.    [57.] Jockey's conduct is deceptive or fraudulent and is likely to cause consumer confusion including reverse confusion or misunderstanding as to Cooper's affiliation, connection, or association with Jockey.

**ANSWER:** Denied.

67.    [58.] Jockey's conduct is in willful disregard of Cooper's valuable rights and property in his Be Legendary Marks.

**ANSWER:** Denied.

68.    [59.] Cooper's use in his Be Legendary Marks predate any use which Jockey may rely for purposes of priority. Accordingly, Cooper has priority over Jockey's use.

**ANSWER:** Jockey is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 [59] of the Complaint and therefore denies them.

69.    [60.] Jockey's actions have caused and will continue to cause irreparable injury and damage to Cooper unless Jockey is enjoined from using the Jockey Seal.

**ANSWER:** Denied.

## COUNT V

**VIOLATION OF GEORGIA'S LAW AGAINST UNFAIR COMPETITION
O.C.G.A. § 23-2-55**

70.    [61.] Cooper incorporates the allegations in Paragraphs 1 through 60 above as if set forth fully herein.

**ANSWER:** Jockey repeats and re-alleges its responses to Paragraphs 1–69 [60] above.

71.    [62.] Jockey has engaged in a deliberate scheme of misconduct aimed at displacing Cooper, a small business owner, from the market by deceiving and misleading the public through reverse confusion. This scheme seeks to exploit Cooper's brand without just compensation, allowing Jockey to unfairly enhance its business ventures while undermining a small business's efforts to grow and compete.

**ANSWER:** Denied.

72.    [63.] By failing to compensate Cooper, Jockey, derives an unfair competitive advantage.

**ANSWER:** Denied.

## ANSWER TO PRAYER FOR RELIEF

Jockey denies that Plaintiff is entitled to any relief in this matter. Accordingly, Jockey asks that each of Plaintiff's claims be dismissed with prejudice and that the Court decline to grant Plaintiff any relief requested in its Prayer for Relief.

## DENIAL OF ALL ALLEGATIONS NOT EXPRESSLY ADMITTED

Except as expressly admitted above, Jockey denies each and every allegation and claim in Cooper's complaint.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear under applicable law and rules, and specifically reserving its right to assert additional affirmative defenses as additional information or materials become available through discovery or otherwise, Jockey hereby asserts the following affirmative defenses. Jockey incorporates by reference its responses to the allegations set forth in the Complaint as recited above and those set forth below as if fully set forth herein.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1. Cooper has failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Time-barred)

2. Cooper's claims are barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE
### (Equitable Defenses)

3. Cooper's claims are barred, in whole or in part, by the doctrines of laches, acquiescence, and estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Abandonment)

4. Cooper has no common law rights in the marks identified in Paragraph 11 because Cooper abandoned the marks for a period of three years with no intent to reuse the marks.

## COUNTERCLAIMS

Jockey filed a complaint appealing the same TTAB decision that is at issue here on November 18, 2024, before Cooper filed the instant case. Jockey's claims against Cooper as it relates the allegations set forth in Cooper's complaint are set forth in its previously-filed complaint in *Jockey International, Inc. v. Lamont D. Cooper and Black Jockey Company*, Case No. 24-cv-5294 (N.D. Ga.) and are

incorporated herein as if fully set forth in this pleading. Further, Jockey anticipates filing a motion to consolidate this matter with *Jockey International, Inc. v. Lamont D. Cooper and Black Jockey Company*, Case No. 24-cv-5294 (N.D. Ga.).

## PRAYER FOR RELIEF

WHEREFORE, Defendant Jockey respectfully requests that the Court:

A.    Dismiss Cooper's complaint in its entirety;

B.    Enter an order granting Jockey the relief requested in its complaint in *Jockey International, Inc. v. Lamont D. Cooper and Black Jockey Company*, Case No. 24-cv-5294 (N.D. Ga.);

C.    Award Jockey its attorneys' fees and costs in this action; and

D.    Award Jockey such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Jockey hereby requests a trial by jury on all issues so triable.

Dated this 7th day of July, 2025            */s/ Neil A. Brunetz*  
                                                                   Neil A. Brunetz  
                                                                   Matthew A. Nanninga  
                                                                   DREW ECKL & FARNHAM, LLP  
                                                                   303 Peachtree Street NE, Suite 3500  
                                                                   Atlanta, GA 30308  
                                                                   Tel: (404) 885-1400  
                                                                   brunetzn@deflaw.com  
                                                                   nanningam@deflaw.com

Johanna M. Wilbert*
Nathan J. Oesch*
QUARLES & BRADY LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5100
johanna.wilbert@quarles.com
nathan.oesch@quarles.com
*pro hac vice

*Attorneys for Defendant Jockey International, Inc.*

## CERTIFICATE OF FONT COMPLIANCE

Counsel for Defendant hereby certifies that the forgoing has been prepared with one of the font and point selections approved by the Court in LR 5.1(C): Times New Roman (14 point).

This 7th day of July, 2025.

/s/ Neil A. Brunetz
Matthew A. Nanninga, GA Bar No. 159070
Neil A. Brunetz, GA Bar No. 090799
*Attorneys for Defendant*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30308
(404) 885-1400
mnanninga@deflaw.com
nbrunetz@deflaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day filed **Answer, Affirmative Defenses, and Counterclaims** with the Clerk of Court, using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Dayna C. Cooper | Stephen M. Katz |
| (pro hac vice) | The Katz Law Group, LLC |
| Cooper Legal, LLC | 137 Johnson Ferry Road |
| 1 Olympic Pl. Suite 900 | Suite 2230 |
| Towson, MD 21204 | Marietta, GA 30068-4949 |
| (202) 642.5470 | smkatz@katz.legal |
| Dayna@CooperLegalSolutions.com | |

This 7th day of July, 2025.

*/s/ Neil A. Brunetz*

Matthew A. Nanninga, GA Bar No. 159070
Neil A. Brunetz, GA Bar No. 090799
*Attorneys for Defendant*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30308
(404) 885-1400
mnanninga@deflaw.com
nbrunetz@deflaw.com